FILED
BILLINGS DIV.

2008 OCT  1  AM 10 39

PATRICK E. DUFFY, CLERK
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| STEVEN G. POLESKY; LEANN J. POLESKY; and LEANN J. POLESKY as *guardian ad litem* for KOLTON G. POLESKY, minor child,<br><br>Plaintiffs<br><br>vs.<br><br>JULIE GUNLOCK, *Investigator, State Auditor & Commissioner of Insurance*; MICHAEL BLOOM, *Investigator, State Auditor & Commissioner of Insurance*; ROBERTA CROSS GUNS, *Special Assistant Attorney General*, in their individual capacities, and DOES 1 through 10 inclusive,<br><br>Defendants. | CV-07-42-BLG-RFC-CSO<br><br><br>**FINDINGS and  RECOMMENDATION of United States Magistrate Judge and ORDER** |

Plaintiffs ("Polesky") brought this lawsuit after the Montana State Auditor's

Insurance Department instigated administrative and criminal proceedings against

Steven Polesky following an investigation of products he sold for a business called

Supplemental Benefits Association of Montana ("SBAM").  Before the Court is a

summary judgment motion brought by Defendants Julie Gunlock and Michael Bloom in

their individual capacities.  *Court's Doc. No. 35.*   The Court held a hearing on this

motion on September 23, 2008, at which counsel for both parties argued.  For reasons

1

stated below, the Court recommends granting the motion.

## I.   **BACKGROUND**

The general factual background is set forth in the Findings and Recommendation of February 12, 2008. *See Court's Doc. No. 12 at 2-3.*   On August 4, 2008, Chief Judge Cebull adopted this Court's recommendation that defendant John Morrison be dismissed. *See Court's Doc. No. 55.* Accordingly, the remaining defendants are Julie Gunlock ("Gunlock"), Michael Bloom ("Bloom"), Roberta Cross Guns ("Cross Guns"), and the Doe defendants.[1]

As these Findings and Recommendation primarily concern Gunlock and Bloom, some additional background is necessary on their respective roles in the underlying investigation and prosecution of Polesky.  On March 10, 2004, Rosanne Grandy ("Grandy"), then employed in the Policy Holder Services Bureau of the State Auditor's Office, referred an investigation to Bloom, who was then an investigator for the Legal/Enforcement Division of the Auditor's Office.  *Statement of Undisputed Facts (Court's Doc. No. 38) , ¶2 ("SUF"); Bloom Decl., ¶6.*  Grandy asked Bloom to investigate Steven Polesky and SBAM for possibly replacing Medicaid Supplement Policies with unapproved policies through an unauthorized company.  *SUF, ¶3; Ex. J at 1; Bloom Decl., ¶6.*  Grandy based her referral on a call from C.S., an insurance consumer.  *SUF, ¶4; Ex. J. at 2.*

---

[1]The Court lacks jurisdiction over Cross Guns because she was not served with the Amended Complaint in the time provided by the Court's April 2, 2008, Order (Court's Doc. No. 31).  There is no indication in the Court's docket that Cross Guns has been served.  There is no indication that Plaintiffs have identified or served the Doe Defendants.

Bloom called C.S., and requested the C.S.'s SBAM policy documents.  C.S. faxed to Bloom the SBAM policy documents.  *SUF, ¶¶5-6; Bloom Decl., ¶¶8-9.*  After receiving the SBAM policy documents, Bloom consulted with Cross Guns, an attorney in the Legal/Enforcement Division of the Auditor's Office.  *SUF, ¶7; Bloom Decl., ¶ 10.*

Based on a variety of information, including information supplied by Bloom, Cross Guns determined that there was probable cause to support several criminal charges against Steven Polesky.  *SUF, ¶¶ 8-9.*  Cross Guns issued a Notice of Proposed Agency Action, and filed a Motion and Affidavit in Support of Investigative Subpoena.  *Id., ¶10.*  Based on the Notice of Proposed Agency Action, the Deputy Insurance Commissioner ordered Steven Polesky to cease and desist selling SBAM products pending final resolution of the Notice.  *Id., ¶11.*  Based on the Motion and Affidavit in Support of Investigative Subpoena, Montana District Court Judge McCarter issued an investigative subpoena.  *Id., ¶12.*

Gunlock, a fraud investigator for the Auditor's Office, assisted Bloom in serving the cease and desist order and investigative subpoena on Polesky.  *Id., ¶13; Gunlock Decl., ¶3.*  Gunlock and Bloom requested permission to enter the office area of the Polesky residence.   Leann Polesky directed Gunlock and Bloom to the office area of the Polesky residence after Steven Polesky spoke with his attorney.  *SUF, ¶15; Gunlock Decl., ¶¶5-7, 9.*  Gunlock and Bloom examined Big Sky Insurance Services records (another of Polesky's businesses) in the office area, and Leann Polesky brought Gunlock and Bloom SBAM records from a different location.  *SUF, ¶¶16-17; Gunlock Decl., ¶¶12-*

3

13. Gunlock and Bloom took only the SBAM records, which Bloom took to his Helena office for review. *SUF, ¶18; Gunlock Decl., ¶18.*

From his review of the SBAM documents, Bloom concluded that nine individuals, in addition to C.S., had purchased SBAM products from Polesky. *SUF, ¶25; Bloom Decl., ¶13.* Bloom states that he telephonically contacted each of the nine SBAM purchasers and assembled the resulting information in a chart for Cross Guns. *SUF, ¶26; Bloom Decl., ¶14; Ex. N.* Bloom presents in support of this contention a telecommunication statement for his phone at the Auditor's Office and the Verizon Wireless bill for an Auditor's Office cell phone. *SUF, ¶27; Ex. A (Friesen Decl.), ¶¶6-7; Ex. O; Ex. P.* Polesky disputes whether Bloom contacted all of the individuals other than C.S., and alleges that he did not investigate in a timely manner, presenting former SBAM members' sworn statements in support. *See Court's Doc. No. 18, Ex. 1.*

Cross Guns subsequently charged Steven Polesky with theft and elder abuse. *SUF, ¶28.*

## II.   PARTIES' ARGUMENTS

Bloom and Gunlock seek summary judgment arguing that Polesky cannot identify the Constitutional or federal statutory rights denied him, and thus cannot state a 42 U.S.C. § 1983 or § 1985 claim. They also contend that Polesky's state law claims fail on the basis of quasi-judicial immunity and because claims against Bloom and Gunlock individually are barred by Mont. Code Ann. § 2-9-305(5). *Mem. Supporting MSJ (Court's Doc. No. 37) at 2.*

4

Regarding Polesky's specific claims, Bloom and Gunlock argue the following: First, Polesky's first claim fails because he cannot state a claim for unreasonable search and seizure. *Id. at 5.* Under Montana law, a person licensed to sell insurance must maintain a publicly accessible place of business, and the Commissioner of Insurance may examine accounts, records, documents, and transactions at his or her discretion. *Id.* Further, Bloom and Gunlock would be protected by qualified immunity. Finally, Polesky voluntarily complied with an investigative subpoena. *Id. at 5-6.*

Second, Polesky's second, third, fourth, and fifth claims fail as to Bloom and Gunlock because neither personally participated in the conduct allegedly giving rise to those claims. *Id. at 6-8.*

Third, Polesky's sixth and seventh claims fail because he has not alleged that the plaintiffs are members of a protected class, as he must to state a civil conspiracy claim under 42 U.S.C. § 1985. *Id. at 8-9.*

Fourth, Polesky's malicious prosecution claim fails because he cannot establish that the prior proceeding terminated in such a manner as to indicate his innocence. *Id. at 9.*

Fifth, Polesky's § 1983 claim for negligent investigation fails for three reasons: (1) Gunlock did not significantly participate in the investigation; (2) negligent conduct cannot give rise to a due process claim under § 1983; and (3) Bloom's investigation was not negligent, nor does any evidence indicate he concealed any facts he discovered. *Id. at 10-15.*

Finally, Polesky's state law claims are barred by quasi-judicial immunity, as Bloom and Gunlock were performing discretionary functions for an executive agency. *Id. at 15-16.* Also, state law claims against Bloom and Gunlock are barred by the Montana Tort Claims Act, as both were state employees acting within the scope of their employment. *Id. at 16-17.*

Bloom and Gunlock also request attorneys fees, arguing that Polesky's action is frivolous, unreasonable, or without foundation, warranting an award of fees. *Id. at 17-18.*

Polesky responds that genuine issues of material fact require denial of Bloom and Gunlock's motion. *Pls.' Response (Court's Doc. No. 53) at 2.* Initially, Polesky makes an argument apparently directed to Judge Cebull's review of Findings and Recommendations, rather than the instant motion. *Id. at 3-4.* Polesky's first applicable argument is that his first claim for relief states a claim for violation of his right to privacy, administrative due process, equal protection, and freedom from unreasonable search and seizure. *Id. at 16-17.* In support, Polesky argues that the defendants misused the investigative subpoena, that in November 2003 Polesky's attorney contacted the state for guidance on setting up SBAM, and that Bloom based his investigation of Polesky on the pretext that C.S.'s inquiry was a complaint. *Id. at 16-17.*

Polesky also argues that Bloom and Gunlock withheld information in the administrative and criminal proceedings. *Id. at 17-18.* This argument turns on Bloom's assertion that he contacted all nine individuals who bought SBAM products, and any

6

notes he took from these interviews.  Polesky argues the existence of these notes and "Exhibit N"[2] is a genuine question of fact.  *Id. at 18.*

Polesky argues a jury could conclude that defendants initiated administrative and criminal prosecutions without probable cause.  *Id. at 18.*  Polesky further argues that using the subpoena duces tecum as a pretext to enter and search Polesky's residence, and use of the fruits of the search in criminal proceedings, violates his Fourth, Sixth, and Fourteenth Amendment rights.  *Id. at 19-20.*  Polesky argues that the defendants relied primarily on one piece of uncorroborated information, the telephone call from C.S., to seek the investigative subpoena, and a jury is entitled to discredit the inferences defendants drew from that evidence.  *Id. at 20.*  Polesky states that it is the jury's prerogative to find more persuasive his version of the facts surrounding the administrative, criminal, and current cases.  *Id.*

Finally, Polesky argues that genuine issues exist regarding defendants' conduct. He states that defendants may have destroyed Bloom's notes or fabricated "Exhibit N." He also argues that substantial evidence supports his contention that constitutional violations occurred due to former defendant Morrison's official policy of ignoring the confidentiality of criminal justice information for political reasons.  *Id. at 21-22.*

Bloom and Gunlock reply that Polesky's response violates the local rules, that the response fails to make Polesky's case, and restate their arguments already outlined

---

[2]Exhibit N to Defendants' Statement of Undisputed Facts is a chart of Bloom's notes regarding phone calls he made to SBAM purchasers, calls Bloom states occurred between March 22 and 30, 2004.

above.[3]  See Court's Doc. No. 54.

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and
disclosure materials on file, and any affidavits show that there is no genuine issue as to
any material fact and that the movant is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56©.  Material facts are those which may affect the outcome of the case.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material
fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for
the nonmoving party.   Id.

The party moving for summary judgment bears the initial burden of identifying
those portions of the pleadings, discovery, and affidavits that demonstrate the absence
of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).
Where the moving party will have the burden of proof on an issue at trial, it must
affirmatively demonstrate that no reasonable trier of fact could find other than for the
moving party.  But on an issue for which the opposing party will have the burden of
proof at trial, the moving party need only point out "that there is an absence of

---

[3] Bloom and Gunlock are correct that Polesky's response brief, Court's Doc. No. 53, is
two pages in excess of the page limit provided by Local Rule 7.1(e).  Also, some of Polesky's
exhibits, most notably an over-length brief in opposition to a not-yet-filed motion for sanctions,
Court's Doc. No. 53-2, are not proper, germane exhibits allowed under L.R. 7.2(a)(5).  Finally,
the affidavit of Attorney Beck concerning the instant motion, which presumably should have
been filed with the response, was filed as an exhibit to a motion for reconsideration before
Judge Cebull nine days after Bloom and Gunlock filed their reply.  See Court's Doc. No. 59-3 at
19.  The Court is at a loss to explain plaintiffs' counsel's actions, but cautions counsel that, in
light of the pattern of Local Rule violations in this case, further violations may result in
sanctions.

evidence to support the nonmoving party's case." *Id.*

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

## IV.   DISCUSSION

The question before the Court is whether any genuine and material factual issues exist regarding Bloom and Gunlock's potential liability to Polesky under federal or state law.  As explained below, the Court concludes that there is an absence of evidence supporting Polesky's federal and state claims against Bloom and Gunlock, Polesky has not set forth specific facts showing a genuine issue for trial, and Bloom and Gunlock are entitled to judgment as a matter of law.  The Court therefore will recommend summary judgment for Bloom and Gunlock on all claims.

Relevant to the discussion below is Polesky's counsel's acknowledgment, at oral argument, that Polesky has no evidence Bloom or Gunlock participated in the press release about Polesky by the Auditor's office.  Polesky has no facts about Bloom and Gunlock's participation, other than those set forth above. *See Aff. of Allen Beck (Court's Doc. No. 59-3) ¶¶ 18-23.*  Counsel for Polesky argued that he needs to conduct discovery to determine Bloom and Gunlock's participation, especially participation in the press release or a pattern and practice of civil rights violations by the Auditor's Office,

9

and to determine if Bloom and Gunlock were forthcoming in their respective declarations.

The Federal Rules of Civil Procedure provide that, when a party shows by affidavit that it is unable to present the facts essential to its opposition to summary judgment, the court may, *inter alia*, order a continuance and allow discovery. Fed.R.Civ.P. 56(f). Polesky made such a motion, which the Court denied because it was not supported with an affidavit setting forth specified reasons Polesky could not present facts sufficient to justify his opposition to summary judgment. *See Court's Doc. No. 44; Court's Doc. No. 49.* Polesky was, however, allowed time to respond to the motion.

The Court will reach the summary judgment motion without allowing additional discovery. The Federal Rules of Civil Procedure are in place to assure the just, speedy, and inexpensive resolution of disputes. Fed.R.Civ.P. 1. Here, Polesky had ample opportunity to request additional discovery within the bounds of the rules, but did not do so. Polesky has already received numerous continuances which have significantly delayed resolution of this matter. The Court must consider fairness to all parties, including the defendants. Polesky's disagreement with the facts as declared by Bloom and Gunlock is, as he admits, supported only by speculation. Thus, the Court must proceed to the merits of Bloom and Gunlock's motion.

## A.    Federal Law Claims

At the outset the Court notes that, even assuming Polesky was deprived of

10

federal constitutional or statutory rights by publication of criminal justice information, procurement of the investigative subpoena, the prosecutor's probable cause determination, or the administrative and criminal prosecutions, there is no evidence before the Court that Bloom or Gunlock personally participated in these actions. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 only arises upon a showing of personal participation by the defendant."). Polesky's speculation to the contrary is not, as a matter of law, sufficient to create a fact issue regarding personal participation where Gunlock, Bloom, and others involved have declared under oath that they had no personal involvement. See Witherow v. Paff, 52 F.3d 264, 266 (9th Cir. 1995) (appellant's speculation does not create factual dispute where appellant has introduced no evidence to controvert moving party's affidavit).

The evidence before the Court, uncontroverted other than by unsupported speculation, is that Gunlock's personal participation consisted of: (1) serving the cease and desist order and investigative subpoena with Bloom; (2) assisting Bloom in examining the records of Big Sky Insurance Services (another of Polesky's businesses); and (3) attending the interview Bloom conducted with C.S. the evening prior to serving process on Polesky. *Defs.' SUF, ¶19; Gunlock Decl., ¶15.*

The uncontroverted evidence shows that Bloom's personal participation consisted of: (1) calling C.S. and requesting a copy of his SBAM policy documents; (2) consulting with Cross Guns; (3) serving the cease and desist order and investigative subpoena on Polesky; (4) examining the records of Big Sky Insurance Services in Polesky's office;

11

and (5) reviewing the SBAM documents in his Helena office. *Defs.' SUF, ¶¶3, 5-7, 13, 15-18.* Also, though disputed by Polesky, Bloom states he telephonically contacted each of the SBAM purchasers. *Id., ¶¶25-27.*

Bloom and Gunlock's actions do not give rise to a federal claim for Polesky. First, Polesky alleges that Bloom and Gunlock's service of the investigative subpoena, search of the Big Sky Insurance Services records, and taking of the SBAM records, violated his federal constitutional right to be free from unreasonable search and seizure.

According to the transcript provided by the defendants, Bloom asked Polesky permission to enter the office area of the home. *Defs.' SUF, Ex. L at 2.* Polesky has filed no affidavit stating that he did not consent to Bloom and Gunlock entering. Polesky consulted with his attorney via telephone. *Id. at 4-5.* Bloom read Polesky his <u>Miranda</u>[4] rights. *Id. at 15-17.* Leann Polesky then went to another location to retrieve the SBAM documents sought in the subpoena and then provided them to defendants. *Id. at 18.* According to Gunlock's declaration, Bloom and Gunlock reviewed Big Sky Insurance Services records in the office while Leann Polesky retrieved the SBAM documents. *Gunlock Dec., ¶13.* Subsequently, Polesky chose not to answer any questions. *Ex. L at 33-34.*

Qualified immunity protects from individual liability public officials performing discretionary tasks, so long as the officials' actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."

---

[4]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Saucier v. Katz, 533 U.S. 194, 200-202 (2001).  Under Mont. Code Ann. § 33-1-402, the Commissioner of insurance "may, as often as he considers advisable, examine the accounts, records, documents, and transactions pertaining to or affecting its insurance affairs or proposed insurance affairs of: (1) an insurance producer, surplus lines insurance producer, general insurance producer, or adjuster[.]"

Bloom and Gunlock, as investigators for the Commissioner of Insurance, are entitled to qualified immunity for their actions in entering the office area of the Poleskys' home and there reviewing the Big Sky Insurance Services records.  Further, given the existence of M.C.A. § 33-1-402, no constitutionally protected interest in these records was at stake because Polesky cannot have had a reasonable expectation of privacy in his Big Sky Insurance Services records.

Bloom and Gunlock also are entitled to qualified immunity regarding the SBAM documents because the investigative subpoena duces tecum specifically authorized Bloom and Gunlock to retrieve those documents[5].  See Malley v. Briggs, 475 U.S. 335, 343-46 (1986) (police officers acting pursuant to invalid arrest warrant may assert the defense of qualified immunity).  The investigative subpoena duces tecum directed Polesky to produce on demand, to Cross Guns, Bloom, or Gunlock, "all documents or

---

[5] Polesky's assertion that an investigative subpoena under Mont. Code Ann. § 46-4-304 was not a proper way to compel production of the SBAM documents is likely incorrect.  See State v. Baldwin (1990), 242 Mont. 176, 182, 789 P.2d 1215, 1219 ("Law enforcement officials may use investigative subpoenas to compel the presence of witnesses or the production of documents.").  In any event, violation of state law regarding the investigative subpoena would not support a § 1983 claim.  Barry v. Fowler, 902 F.2d 770, 772 (9th Cir. 1990).

correspondence" relating to Big Sky Insurance Services and SBAM. *See Court's Doc. No. 1 at 76.*

Polesky argues that the investigation prior to charges was negligent. Bloom has declared, with corroboration from State of Montana paralegal Ruth Friesen and phone records from the State Auditor's office (*See Defs.' SUF, Ex. A, O*), that he contacted all SBAM purchasers in March, 2004. Polesky argues Bloom did not contact the SBAM purchasers as claimed, and has previously produced sworn statements from SBAM purchasers in support. *See Court's Doc. No. 18, Ex. 1.* Thus, there is a factual dispute over Bloom's calls.

The above factual dispute is not, however, material. The prosecutor, not Bloom, determined that Bloom's investigation had established probable cause to file charges. *See Bloom Decl., ¶4.* Further, even if Bloom's investigation was negligent, negligence cannot give rise to a 42 U.S.C. § 1983 due process claim as a matter of law. See e.g. Daniels v. Williams, 474 U.S. 327, 328, 331 (1986); Blaylock v. Schwinden, 862 F.2d 1352, 1354-55 (9th Cir. 1988). If Polesky's allegation of negligent investigation does not give rise to a federal claim against Bloom, clearly there is no viable claim against Gunlock, who had far less involvement in the investigation.

Additionally, no evidence has been submitted that indicates that Bloom or Gunlock withheld or misrepresented information they gathered. Regardless of whether Polesky was entitled to "Exhibit N", the prosecutor, not Bloom or Gunlock, practices law and conducts discovery. Again, Polesky's unsupported speculation and attribution of

14

the prosecutor's actions to Bloom and Gunlock do not create triable fact issues.

Witherow, 52 F.3d at 266.

Finally, Polesky's 42 U.S.C. § 1985(3) claim, the "Sixth Claim for Relief" in the

Amended Complaint, is unsupported in fact and law.  To state a claim under 42 U.S.C. §

1985(3), plaintiffs must allege that "they belong to a racial group or an otherwise

protected class, [and] that the defendants intentionally discriminated against them on

such grounds."  Holgate v. Baldwin, 425 F.3d 671, 676 (9th Cir. 2005).  Polesky's Sixth

Claim for Relief does not allege any plaintiff is the member of a protected class as

required to state a § 1985(3) claim.  *See Amended Complaint, ¶¶149-153.*  Further,

even if the Court accepted Polesky's unsupported claim that he is suing as a

representative or advocate for a protected class of elderly insurance consumers (*see*

*Pls.' Br. at 8*), there is no suggestion that Polesky's status as such was the grounds for

the alleged civil conspiracy.   Likewise, counsel's argument at the hearing that plaintiff

Leanne Polesky, as a female, is in a protected class, fails here because this is not

alleged in the complaint and there is no suggestion gender was the grounds for any

alleged conspiracy.  The only actions alleged in the § 1985(3) claim which Bloom and

Gunlock could have participated in are negligent investigation, and execution of a

"search warrant."  *Id., ¶150, a-c.*  Even if true, mere negligence is not the intentional

discrimination necessary to support a § 1985(3) claim.

In light of the foregoing, the additional allegations or arguments in Polesky's

pleadings and briefs are without merit and do not give rise to federal claims.  For

15

example, Polesky's failure to state a 42 U.S.C. § 1985(3) claim necessarily means he

cannot state a 42 U.S.C. § 1986 claim.  See Lowden v. William W. Mercer, Inc., 903

F.Supp. 212, 218 (D.Mass. 1995) (prerequisite for § 1986 claim is a conspiracy

actionable under § 1985).

      To summarize, the Court applies the analysis above to the specific federal claims

for relief in the Amended Complaint:

      (1)  The first claim alleges a § 1983 claim for violation of the 4th Amendment
unreasonable search and seizure.  This claim fails because, for the reasons
explained above, Bloom and Gunlock are entitled to qualified immunity and
Polesky had no reasonable expectation of privacy in the documents searched.

      (2)  The second claim for relief alleges a § 1983 claim for unlawful restraint of
Polesky's First Amendment rights.  This claim fails because, even if issuance of
the "gag order" were actionable, there is no evidence Bloom and Gunlock
personally participated in its issuance.

      (3)  The third claim for relief, a § 1983 claim for invasion of privacy, fails
because, as above, there is no evidence Bloom and Gunlock personally
participated in the Auditor's press release.

      (4)  The fourth claim for relief, violation of the Montana Administrative
Procedures Act, fails to the extent it sets forth violation of state law as a basis for
the § 1983 claim.  As to the alleged 14th Amendment due process violations,
again, Bloom and Gunlock either did not personally participate, or are entitled to
qualified immunity for their actions.

      (5)  The fifth claim for relief, retaliation for petitioning as a basis for a § 1983
claim, also fails to the extent it is based on alleged violation of Montana law, and
fails as to any federal due process violation because Gunlock and Bloom are
entitled to qualified immunity in their search, and did not personally participate in
filing charges against Polesky or issuing a press release.

      (6)  The sixth claim for relief, conspiracy giving rise to § 1983 and § 1985(3)
claims, fails to state a claim.

      (7)  The seventh claim for relief, refusing or neglecting to prevent under § 1983

16

and § 1986, fails because, as discussed above, a prerequisite to a § 1986 claim is an actionable § 1985 claim.

(8)  The eighth claim for relief, failure to train under § 1983, is an attempt to plead municipal liability under § 1983 that is not applicable to Bloom and Gunlock.

The Court concludes that summary judgment is appropriate on all federal constitutional and statutory claims against Bloom and Gunlock.

## B.    State Law Claims

State employees acting within the course and scope of their employment are protected from individual liability for that conduct by the Montana Tort Claims Act. Kenyon v. Stillwater County (1992), 254 Mont. 142, 146, 835 P.2d 742, 745, (overruled on other grounds by Heiat v. Eastern Mont. College (1996), 275 Mont. 322, 331, 912 P.2d 787, 793).  Further, quasi-judicial immunity protects from civil liability executive agency employees performing discretionary administrative functions.  Gerber v. Commissioner of Insurance (1990), 242 Mont. 369, 371, 786 P.2d 1199, 1200-01.

It is undisputed that Bloom and Gunlock undertook their actions relevant here within the course and scope of their state employment.  *See Amended Complaint, ¶92; Defs.' Mem. Supporting MSJ at 16*.  Also, Bloom and Gunlock were performing discretionary administrative functions while undertaking their relevant actions. Id. at 1200-01.   Accordingly, even if Bloom and Gunlock's limited involvement somehow violated state law, they are not individually liable to Polesky.  The Montana Tort Claims Act and quasi-judicial immunity prevent Bloom and Gunlock from being liable on each of Polesky's state law claims.  The Court concludes that summary judgment is appropriate

17

on all state law claims against Bloom and Gunlock.

### C.    Attorneys Fees

Bloom and Gunlock argue that they are entitled to a reasonable attorney's fee because Polesky's case is "frivolous, unreasonable, or without foundation." A successful defendant in a civil rights case may recover an attorney's fee in such cases. Magg v. Wessler, 993 F.2d 718, 719 (9th Cir. 1993); Jensen v. Stangel, 762 F.2d 815, 817 (9th Cir. 1985). In Maag, the court stated that a district court may award attorney's fees to a prevailing defendant "only in limited circumstances." Maag, 762 F.2d at 817. It continued: "A prevailing defendant in a civil rights action is entitled to an attorney's fees award where plaintiff's action, even though not brought in subjective bad faith, is 'frivolous, unreasonable, or without foundation.'" Id.

The Court will deny Bloom and Gunlock's request for an attorney's fee. The basis for this request is that Polesky continued to prosecute claims against Bloom and Gunlock after those claims were dismissed as to the State of Montana and the Court indicated its views that the various defendants' briefs appeared to have merit, and that the Amended Complaint reflected poorly on the merits of the action. *Defs.' Mem. Supporting MSJ at 17-18.*

Though the Court's rulings cannot have encouraged Polesky, those rulings did not definitively reach the merits of the case. Accordingly, the Court's prior rulings did not unequivocally find that Polesky's claims would fail on the merits as to Bloom and Gunlock. Although it is a close question, the Court does not find that this is one of

18

those "limited circumstances" in which an award of attorney's fees is appropriate.

## V.   CONCLUSION

Based on the foregoing,

**IT IS RECOMMENDED** that Bloom and Gunlock's Motion for Summary Judgment (*Court's Doc. No. 35*) be **GRANTED**, that judgment for defendants be entered, and this case closed.

**IT IS ORDERED** that Bloom and Gunlock's request for attorney's fees is **DENIED.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall serve a copy of this Findings and Recommendation upon the parties. All parties are advised that, pursuant to 28 U.S.C. § 636(b)(1), any objections to the Findings and Recommendation must be filed with the Clerk of Court within ten (10) days after receipt hereof, or objection is waived.

DATED this 1st day of October, 2008.

Carolyn S. Ostby
United States Magistrate Judge